PINNELL LUMBER COMPANY v. SMITH

[No. 16,458. Filed November 7, 1939. Rehearing denied April 19, 1940.]

*James L. Murray,* for appellant.
*Donald F. Roberts,* for appellee.

DeVoss, C. J.—This court, heretofore on the 7th day of November, 1939, rendered an opinion (23 N.

E. 2nd 283), in this cause and upon appellant's petition for a rehearing, after considering said petition for a rehearing and the authorities, now grants such petition for a rehearing herein, and now renders the following opinion in lieu of said former opinion to wit:

Appellee filed his application with the Industrial Board of Indiana for compensation for an injury suffered as the result of an accident arising out of and in the course of his employment with appellant, from which accidental injury appellee lost the complete vision of his left eye.

The application was submitted to said Board, composed of one member thereof, and said Board member, having heard the evidence, made a finding and award adverse to appellee.

Thereafter said appellee applied for a review of such award by the full Industrial Board, and said full Industrial Board on review made a finding and award by a majority of said Board, which finding and award of the full Board is as follows:

"And the full Industrial Board, having heard the argument of counsel, having reviewed the evidence taken at the time of the hearing before the single member and the evidence taken at the time of this hearing before the full Board, now finds that on January 26, 1939, while in the employ of the defendant at an average weekly wage of $22.50, plaintiff suffered an injury as the result of an accident arising out of and in the course of his employment, of which the defendant had knowledge; that as a result of said accidental injury plaintiff has suffered the complete loss of vision of his left eye.

"AWARD

"It is therefore considered and ordered by the full Industrial Board of Indiana that there is awarded plaintiff as against defendant, compen-

sation at the rate of $12.38 a week for 150 weeks, beginning with January 27, 1939, deferred payments to be brought up to date and paid in cash and in a lump sum.

"It is further ordered that defendant shall pay the reasonable and necessary medical, surgical, hospital and nurse's services for the first 90 days following the accidental injury.

"It is further ordered that the defendant shall pay the costs of this proceeding.

"It is further ordered that all compensation by virtue of this award be paid directly to the plaintiff, except as hereinafter ordered paid to plaintiff's attorney.

"It is further ordered that the fees of plaintiff's attorney in this cause shall be: A minimum sum of $10.00, and in addition thereto 10% upon the first $1,000.00 or fraction thereof recovered; 5% upon the second $1,000.00 or fraction thereof recovered and 2½% upon all sums in excess thereof, and that said attorney fees shall be paid by defendant direct to plaintiff's attorney of record, Donald F. Roberts, and that defendant shall have credit against the compensation herein awarded plaintiff for all sums paid out as attorney's fees in accordance with this award.

"It is further ordered that the amount of attorney's fees ordered paid herein shall be paid in proportion to the amount of compensation actually paid for the period due."

From this award of the full Industrial Board appellant appeals to this court and assigns as error: That the award of the full Industrial Board of Indiana is contrary to law.

It is contended by appellant that appellee's loss of vision in his left eye was not the result of any accidental injury; that there is no casual connection between the blindness in the left eye of appellee and any accidental injury suffered by him.

Appellee testified that he was 29 years old, mar-

ried, and employed by appellant on the 26th day of January, 1939, and that he had been so employed three years. That on the 26th day of January, 1939, he was unloading dimension lumber for said appellant from a box car; that during the course of that work some dust blew into his left eye. That he was instructed by his foreman to go and see another individual who took him to the office and there administered some treatment to the eye; that immediately thereafter he went back to where the car had been placed, got up on a stack of lumber and was piling the lumber, which was being handed to him from the car by another employee of appellant; that after stooping over and receiving a stick of timber from said employee he raised up and struck his head on a beam of the roof of the shed in which the timber was being stacked. That Mr. Rice, the party who was assisting in the unloading of the timber, said: ''You could heard it plum to the corner,'' meaning the striking of his head; that he became dizzy and could hardly see the timbers when they were handed up to him, and that he went to the doctor and from that day to the present he could not see out of his left eye. That it is completely dark; that prior to that time he had never suffered from any disease and did not lay off nor had he ever had any pains; that the injury occurred around nine o'clock A. M., and that he was dizzy and couldn't see, but that sight came back to his right eye in about 10 minutes; that his eyes burned and watered and continued to do so until after he went to the doctor, got a prescription and put some of the medicine prescribed into his eyes, and that about 7 o'clock P. M. of the same day his eyes were relieved from the burning.

A part of the evidence of Dr. Carter, one of the

physicians who examined appellee after the accident, is quoted verbatim as follows:

"Q. Did he state to you he had received a blow on the back of the head while stacking lumber for the Pinnell Lumber Company?

"A. He did.

"Q. Such a blow as received by this man on the back of the head would cause him to be dizzy and in a daze for some time, would you say in your opinion it is possible for that to have caused a lesion in the optic nerve?

"A. A blow on the head of such severity could probably produce a hemorrhage into or around the optic nerve, producing destruction of the nerve and total blindness.

"Q. The fact that the failure of the sight started within fifteen minutes after the blow on the back of the head of the plaintiff would indicate what to you, doctor?

"A. Well, the natural conclusion—of course it might be co-incidental. The natural conclusion would be there *was some relationship between the blow and the onset of his blindness.*

"Q. Do you know the cause of the blindness?

"A. The cause of the blindness was some destruction of the optic nerve.

"Q. If he testified, Doctor, that within fifteen minutes after the blow he lost the sight of both eyes and then gradually the sight of the right eye came back, but the sight of the left eye never did come back, that would indicate a rather sudden blindness in the left eye?

"A. Well it would be very probable. He also stated he was dazed and hazy. It is very common that a person receiving a blow on the head that they are blinded for a short period of time. That is a universal experience. *I would think,* if he testified to that effect, *that the total blindness he*

*complained of,* his inability to see, was the *result of the general brain concussion,* from which he recovered, seeing perfectly well in the right eye and then the *blindness in his left eye coming on gradually and not clearing up entirely.*

"Q. At the time you did make this examination you did find discoloration in the eye?

"A. Yes the eye was colored.

"Q. If this man testified that immediately after this blow to the back of the head he became dizzy and could not see out of either eye and gradually resumed the sight in his right eye, but never resumed his sight in the left eye, the opinion that you have given would not prevail?

"A. I do not see why it shouldn't. His dizziness of vision and blindness in both eyes could possibly have been due to a syncope faint, such as anyone would experience from a blow on the head. I would not attach any significance to the fact that he had dimness of vision in both eyes."

Dr. Kornafel testified he examined appellee at eleven o'clock A. M. on the day he received the injury and that appellee was unable to see out of his left eye. That at that time appellee gave him a history of his injury to the head.

Dr. Odell testified that he was the family physician of appellee; that he examined him on January 30, 1939, February 16 and 17, 1939, and February 27, 1939, and that he had examined him prior to January 26, 1939, and his physical condition was about such as the average person had, and that he found no indication of any disease of the heart or kidneys.

Further evidence was introduced that prior to the time of this injury he had done as much work as any of his co-employees, that it was hard manual labor, and that he lost very little time and then only by reason of a cold.

The burden of establishing each fact necessary to

an award by the Industrial Board rests on the applicant and, as contended by appellant, the finding of such facts must be based upon something more than mere possibility.

However, in determining the question of whether the evidence is not sufficient to sustain the award this court is circumscribed by a well defined principle. We quote from the case of *Morton* v. *Felix* (1937), 104 Ind. App. 666, 671, 10 N. E. (2d) 431: ''This court is committed to the doctrine that in determining the sufficiency of the evidence to sustain the finding of facts that we are limited to a consideration of the evidence most favorable to the appellee, including such inferences favorabe to the appellee as might have been fairly drawn by a jury if the matter had been tried by a jury.''

It is within the province of the Industrial Board to consider circumstantial as well as direct evidence in arriving at their finding. They may also indulge in reasonable inferences from facts established by the evidence. When the Industrial Board has discharged its duty in this regard and has reached a conclusion as to the ultimate facts which have or have not been established and has embodied such conclusion in a finding of facts as the statute requires, this court must accept the facts so found as true, unless the evidence is of such a conclusive character as to force a contrary conclusion. *Swing* v. *Kokomo Steel etc., Co.* (1919), 75 Ind. App. 124, 125 N. E. 471, and cases cited therein; *Morton* v. *Felix,* supra.

The situation presented by the evidence to the Industrial Board was that of a man 29 years old, who was able to and did engage in hard manual labor, and had been so engaged for three years. That prior to the date of the injury he submitted to an examination by a physician who found him in the

average physical condition with no indications of any affliction of the lungs, kidneys or heart. That on the 26th day of January, 1939, he received a severe blow on the back of his head and immediately thereafter became blind in both eyes, but shortly thereafter regained the sight of his right eye, but the sight of his left eye never was recovered. With that evidence alone before them can it be said that the Industrial Board drew an unreasonable inference when they found there was a causal connection between the injury to his head and his blindness? In addition to the circumstances above set out, Dr. Carter testified that a blow on the head of such severity as described could probably produce a hemorrhage around the optic nerve and produce total blindness, and that the natural conclusion would be that there was some relationship between the blow and the onset of his blindness and the further statement of the Doctor: ''I would think . . . that the total blindness he complained of, his inability to see, was the result of the general brain concussion from which he recovered . . . '' and the further statement that the left eye was colored shortly after the injury.

Applying the established rules to the evidence in this case, we can not say that the evidence is of such a conclusive character as to force a contrary conclusion to that of the Industrial Board, even though we consider the evidence of appellant's witnesses who testified that in their opinion there was not and could not be any causal connection between the injury and the subsequent blindness.

Appellant criticizes the brief of appellee. There is some merit in such criticism but we are of the opinion that a good faith effort has been made by appellee to comply with the rules of this court and that his

brief sufficiently answers the contention presented relative to the matter involved in this appeal.

The award of the Industrial Board is affirmed and increased five per cent as provided for by statute. § 40-1512 Burns Indiana Statutes Ann. 1933, § 16437 Baldwin's 1934.